1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

3

4

TRACIE D. MORGAN,

5

Plaintiff,

6

v.

7

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

8

Defendant.

CASE NO. C16-5183 BHS

ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

9

10

11

12

13

This matter comes before the Court on Defendant Hartford Life and Accident
Insurance Company's ("Hartford") motion for summary judgment. Dkt. 20. The Court,
having considered the pleadings filed in support of and in opposition to the motion and
the remainder of the file, denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

14

15

16

17

18

On March 9, 2016, Tracie Morgan ("Morgan") filed a complaint for long-term
disability benefits against Hartford. Dkt. 1. Morgan's sole claim is wrongful denial of
benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001,
*et seq.* ("ERISA"). *Id.*

19

20

21

22

On November 16, 2016, Hartford moved for summary judgment. Dkt. 20.  On
December 5, 2016, Morgan responded. Dkt. 22. On December 9, 2016, Hartford replied.
Dkt. 23.

## II. FACTUAL BACKGROUND

Morgan filed a claim with Hartford for long-term disability benefits claiming a disability date of April 8, 2015. AR000082.[1] To support her claim, Morgan presented records from Drs. Cornelia Moynihan, ND, and Larry Stonesifer, MD. *See* AR000242–47, AR000254–57, AR000264–68. On May 11, 2015, Dr. Moynihan indicated that Morgan was suffering chronic fatigue from infectious mononucleosis or a "flare up of EBV [Epstein-Barr Virus]." AR000242. However, follow-up serologies revealed results indicating former infection with no current illness. AR000244–46. Morgan continued to suffer symptoms of fatigue and an inability to concentrate. AR000255. On June 18, 2015, Dr. Moynihan referred Morgan to Dr. Stonesifer for an endocrine evaluation. AR000253.

Morgan continued to visit Dr. Moynihan for follow-up appointments. On June 26, 2015, Dr. Moynihan authorized Morgan to work four hours per day. AR000343. On July 1, 2015, Dr. Moynihan increased Morgan's work capacity to 4.5 hours each day. AR000347. On July 22, 2015, Dr. Moynihan noted that Morgan continued to suffer fatigue and added nausea. AR000352.

On July 28, 2015, Morgan met with Dr. Stonesifer. AR000265. Dr. Stonesifer assessed Morgan with chronic fatigue and possible reactive hypoglycemia. *Id.* Dr. Stonesifer ordered additional tests, including an insulin tolerance test. *Id.* On July 29, 2015, Dr. Moynihan ordered that Morgan not work from July 30, 2015, through August

---

[1] The Court adopts the same format for citations used by the parties to reference evidence contained in the plan administrator's record. *See* Dkt. 20 at 2; Dkt. 22 at 2. The record is available on the electronic docket at Dkts. 21-1, 21-2, and 21-3.

1  21, 2015. AR000374. In the same note, Dr. Moynihan stated that Morgan could return to

2  work for 3 hours per day beginning on August 24, 2015. *Id.*

3       On August 19, 2015, Morgan returned for a follow-up with Dr. Stonesifer.

4  AR000267. Reviewing Morgan's lab results, Dr. Stonesifer noted that Morgan's "insulin

5  tolerance test was diagnostic of growth hormone deficiency." *Id.* However, he noted that

6  "for definitive diagnosis, we will need the Cortrosyn Stim study." *Id.*

7       On August 24, 2015, Morgan returned to work on a three-hour-per-day schedule.

8  AR000405. On August 28, 2015, Dr. Moynihan authorized Morgan to increase her

9  schedule on Mondays and Fridays from three hours to four. AR000308.

10       On September 18, 2015, Dr. Ifeanyi Nwaneshiudu, MD, NPH, reviewed the

11  medical records submitted to support Morgan's claim to Hartford. AR 000278–81. Dr.

12  Nwaneshiudu did not include the records of Dr. Stonesifer in his review. AR000278–79.

13  Dr. Nwaneshiudu assessed that "[w]ithout any evidence of a diagnosis causing physical

14  impairment, there is no need for medical necessary work restrictions." AR 000280. On

15  September 30, 2015, Dr. Nwaneshiudu completed an addendum to his initial review after

16  discussing Morgan's functional status with Dr. Moynihan. AR 000270. In the addendum,

17  Dr. Nwaneshiudu noted that his "impression of no impairment diagnosis is unchanged."

18  AR000270.

19       On October 6, 2015, Hartford denied Morgan's application for long-term disability

20  benefits based on Dr. Nwaneshiudu's review. AR000102–06. Morgan appealed and

21  Hartford submitted her medical records to Dr. Charles Fisher, Jr., MD, for another

22  review.

1     On November 18, 2015, Morgan met with Dr. Stonesifer, who noted in his

2  records: "I have written a letter today asking [Hartford] to give us more time to get her

3  growth hormone to a more appropriate level. I think she is significantly disabled and

4  growth hormone deficiency can certainly cause these symptoms . . . ." AR000173. His

5  letter, dated November 12, 2015, stated: "[Morgan] was recently diagnosed with adult

6  growth hormone deficiency. She has been on growth hormone for less than a month but it

7  may take a longer time for her growth hormone to achieve therapeutic level." AR000169.

8     On February 2, 2016, Dr. Fisher concluded that Morgan had no physical

9  limitations and that "there is no objective evidence to support a physical inability to

10  remain awake."AR000158. On February 5, 2016, Dr. Fisher noted in an addendum that,

11  although "Dr. Stonesifer has diagnosed Ms. Morgan with Adult Human Growth Hormone

12  Deficiency using standard methodologies . . . absent any sort of specific deficit, it would

13  be impossible for any physician to specifically restrict or limit activities based on

14  cognitive deficits alone." AR000129–30.

15     On February 24, 2016, Hartford denied Morgan's appeal based on Dr. Fisher's

16  review. AR000085–91. On March 9, 2016, Morgan commenced the present action. Dkt.

17  1.

18                          **III. DISCUSSION**

19  **A.    *De Novo* Review**

20     The parties stipulate that the standard for this case is *de novo* review. Under *de*

21  *novo* review of an ERISA benefits decision, "'a district court should not take additional

22  evidence merely because someone at a later time comes up with new evidence' and '[i]n

1    most cases' only the evidence that was before the plan administrator should be

2    considered." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999) (quoting

3    *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th

4    Cir. 1995)). Nonetheless, "the district court has discretion to consider evidence beyond

5    the record where additional evidence is necessary to conduct an adequate de novo review

6    of the benefit decision." *See also Walker v. Am. Home Shield Long Term Disability Plan*,

7    180 F.3d 1065, 1070 (9th Cir. 1999) (quotation omitted).

8         While not controlling, the Seventh Circuit's precedent is informative of the

9    rationale for allowing District Courts to consider additional evidence under *de novo*

10   review. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938,

11   943 (9th Cir. 1995) ("We agree with the Third, Fourth, Seventh, Eighth, and Eleventh

12   Circuits that new evidence may be considered under certain circumstances to enable the

13   full exercise of informed and independent judgment."). The Seventh Circuit has stated:

14         Evidence is essential if the court is to fulfill its fact-finding function. Just so
           in ERISA litigation. When review is deferential—when the plan's decision
15         must be sustained unless arbitrary and capricious—then review is limited to
           the administrative record. *See Perlman v. Swiss Bank Corp.*, 195 F.3d 975
16         (7th Cir. 1999). Otherwise, however, the court decides on the record made
           in the litigation. And, if material evidence conflicts, then there must be a
17         trial.

18   *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

19         Here, the parties have suggested that evidence outside the plan administrator's

20   claim file is generally not admissible. *See* Dkt. 15 at 2. They have further indicated that

21   they "do not anticipate the need for any discovery outside of the administrative record."

22   *Id.* Accordingly, the Court will proceed only on the evidence in the plan administrator's

1    claim file. The Court retains its discretion to admit and consider additional evidence that

2    "is necessary to conduct an adequate *de novo* review of the benefit decision." *Thomas v.*

3    *Oregon Fruit Products Co.*, 228 F.3d 991, 997 (9th Cir. 2000) (quotation omitted).

4    **B.      Summary Judgment Standard**

5          Summary judgment is proper only if the pleadings, the discovery and disclosure

6    materials on file, and any affidavits show there is no genuine dispute on any material fact

7    and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The

8    moving party is entitled to judgment as a matter of law when the nonmoving party fails to

9    make a sufficient showing on an essential element of a claim on which the nonmoving

10   party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There

11   is no genuine issue of fact for trial where the record could not lead a rational trier of fact

12   to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

13   U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

14   evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).

15   Conversely, a genuine dispute over a material fact exists if sufficient evidence supports

16   the claimed factual dispute, requiring a judge or jury to resolve the differing versions of

17   the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv.,*

18   *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

19         Determining the existence of a material fact is often a close question. The Court

20   must consider the substantive evidentiary burden that the nonmoving party must meet at

21   trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at

22   254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  Here, the Court already has the entire record

1   before it. The Court may not resolve any factual disputes in favor of the moving party on

2   summary judgment. "In a trial on the record, but not on summary judgment, the judge can

3   evaluate the persuasiveness of conflicting testimony and decide which is more likely

4   true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). Any findings of

5   fact requiring the court to weigh conflicting evidence must be reserved until the Court

6   conducts a trial on the record. *Id.* at 1094–95.

7   **C.      Coverage and Proof of Disability**

8          An ERISA fiduciary must distribute benefits "in accordance with the documents

9   and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Under the governing

10  plan, claimants like Morgan are eligible to receive monthly benefits "if [they] are

11  *Disabled* according to the Occupation Qualifier provision." AR00010. The "Occupation

12  Qualifier provision" states that:

13          "Disability means that . . . *Injury* or *Sickness* causes physical or
        mental impairment to such a degree of severity that you are:
14              1) continuously unable to perform the *Material and
        Substantial Duties* of *Your Regular Occupation*; and
15              2) not *Gainfully Employed*.

16  AR000009.

17          The plan also requires that claimants submit a "proof of loss," or "Proof of

18  *Disability*." AR000013. "Failure to do so may delay, suspend or terminate *Your* benefits."

19  *Id.* As part of the "proof of loss," a claimant must submit:

20          Objective medical findings which support *Your Disability*. Objective
        medical findings include but are not limited to tests, procedures, or clinical
21          examinations standardly accepted in the practice of medicine, for *Your*
        disabling condition(s).

22

The plan also states that the policy does not cover losses from a "*Disability* beyond 12 months after the elimination period if it is due to a diagnosed condition which manifests itself primarily with *Self-Reported Symptoms*." AR000013.

Hartford denied Morgan's claim because it determined that her "proof of loss" did not include objective medical findings "demonstrating the physical inability for Morgan to perform her duties." Dkt. 20 at 19. It seeks summary judgment on this same basis. Dkt. 20 at 19–23.

In response, Morgan argues that Dr. Stonesifer diagnosed her with Growth Hormone Deficiency based on a combination of (1) Plaintiff's subjective complaints of fatigue and "brain fog," and (2) an objective insulin challenge test revealing an Insulin-Like Growth Factor-1 ("IGF-1") Z score that "was diagnostic of growth hormone deficiency." AR000155; AR000267; AR000317. Dr. Stonesifer further opined that he "thinks [Morgan] is significantly disabled" after explaining that "growth hormone deficiency can certainly cause [the] symptoms" revealed on Morgan's "quality of life questionnaire," such as severe fatigue and an inability to focus or even remain standing. AR000173.

Hartford replies by citing Dr. Fisher's independent review, which indicates that a diagnosis of growth hormone deficiency is "controversial" and highlights that Dr. Stonesifer's diagnosis was based *almost* exclusively on self-reported symptoms. AR000156–000157. However, even Dr. Fisher noted: "Morgan is chronically fatigued secondary to an endocrine disorder. Her fatigue certainly does and has impaired her function at work and in her daily life." AR000131. Hartford then relies on *Jordan v.*

1   *Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir. 2004), *overruled*

2   *on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir.

3   2006), to argue "[t]hat [Morgan] has a true medical diagnosis does not by itself establish

4   disability." 370 F.3d at 880.

5         This argument based on *Jordan* is effective to argue that Morgan did not suffer

6   from a *disability* as defined by the governing plan. However, the summary judgment

7   motion in *Jordan* was decided under an "abuse of discretion" standard. *Id.* at 878. The

8   Court is not presently tasked with determining if a genuine dispute of fact exists on

9   "whether there is a reasonable basis for the administrator's conclusion that [Morgan] was

10   not disabled by her [growth hormone deficiency]." *Jordan*, 370 F.3d at 880. Instead, on

11   *de novo* review, the Court must assess if a genuine dispute of fact exists regarding

12   "whether [Morgan] was disabled in the sense defined by the policy." *Kearney*, 175 F.3d

13   1093. While the principle iterated in *Jordan* is greatly important when considering the

14   evidence under an abuse of discretion standard, and will likely be outcome determinative

15   when weighing the evidence at trial, Dr. Stonesifer's diagnosis and medical opinion of

16   disability creates a genuine dispute of fact for summary judgment under a *de novo*

17   standard. To accept Hartford's argument, the Court must weigh the reports of Doctors

18   Fisher and Nwaneshidu (indicating no disability) against those of Doctors Moynihan and

19   Stonesifer (indicating disability). Such weighing of the evidence is inappropriate on a

20   motion for summary judgment under *de novo* review. *See Kearney*, 175 F.3d at 1093 (9th

21   Cir. 1999) (genuine issue of fact exists even though medical opinion suggesting plaintiff

22   had memory loss and inability to concentrate was belied by objective tests in the record).

1    Because the Court has found a genuine dispute of fact regarding whether Morgan

2  was disabled under the meaning of the policy, the Court must deny Hartford's motion for

3  summary judgment.

4                                    **IV. ORDER**

5    Therefore, it is hereby **ORDERED** that Hartford's motion for summary judgment

6  (Dkt. 20) is **DENIED**.

7

8                                              _____

9                                              BENJAMIN H. SETTLE
                                               United States District Judge