1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRACIE D. MORGAN,

                    Plaintiff,

            v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                    Defendant.

CASE NO. C16-5183 BHS

OPINION AND ORDER

This matter comes before the Court on the merits of Plaintiff Tracie D. Morgan's ("Morgan") claim against Defendant Hartford Life and Accident Insurance Company ("Hartford") for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Dkt. 1. The Court, having considered the parties' pleadings and the remainder of the record, finds in favor of Morgan and orders the parties to (1) submit further briefing on the issues of attorney fees and prejudgment interest, and (2) meet and confer to craft a stipulated proposed judgment.

# I. PROCEDURAL HISTORY

On March 9, 2016, Tracie Morgan filed a complaint for long-term disability benefits against Hartford. Dkt. 1. Morgan presently brings a claim for wrongful denial of benefits under an ERISA long-term disability plan. *Id.*

On November 16, 2016, Hartford moved for summary judgment. Dkt. 20. On January 26, 2017, the Court denied the motion for summary judgment. Dkt. 27.

On January 31, 2017, the parties submitted trial briefs and proposed findings of fact. Dkts. 29–32. On January 31, 2017, the Court held a pretrial conference at which the parties stipulated that (1) the case should be submitted as a bench trial on the administrative record, and (2) no further evidentiary hearings were necessary. Dkt. 34.

On February 9, 2017, the Court ordered that the parties submit simultaneous additional briefing on specific issues. Dkt. 33. On February 24, 2017, the parties filed their supplemental briefs. Dkts. 35, 36. On March 3, 2017, the parties submitted supplemental responses. Dkts. 37, 38.

# II. FACTUAL BACKGROUND

## A.    Morgan's Employment

In 2015, Morgan was employed as an Operations Specialist in the Dynacraft division at PACCAR, Inc. Morgan's position involved duties that would be classified as a "heavy physical demand occupation." ARCF000005; ARCF000089–90; ARCF000140–44. The duties of Morgan's actual occupation included "the use of power and manual hand tools, carrying up to 15 pounds, pushing parts up to 75 pounds in a cart, constantly handling, fingering, and reaching at waist level, and occasionally reaching above

1  shoulder and below waist level." ARCF000005; AR000089. Also, Morgan's actual

2  position required that she stand for her entire eight-hour workday. ARCF000005.

3   An occupational analysis of the Operations Specialist position by a "Rehabilitation

4  Claims Manager" indicates that, in the national economy, the position is a "medium

5  physical demand occupation," requiring "frequent reaching, handling, fingering, near

6  acuity, and depth perception with occasional stooping, crouching, feeling and color vision

7  required." ARCF000005; ARCF000090. The occupational analysis report does not

8  describe a specific standing requirement as a "physical demand" or "essential duty" of

9  the Operations Specialist in the national economy. ARCF000005. However, the report

10  states that the "environmental conditions" of the occupation in the national economy

11  "may still involve long periods of standing, sitting, or working on ladders." *Id.*

12  **B. Plan Terms**

13   An ERISA fiduciary must distribute benefits "in accordance with the documents

14  and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Under the governing

15  plan, claimants like Morgan are eligible to receive monthly benefits "if [they] are

16  *Disabled* according to the Occupation Qualifier provision." ARPD00010.[1] The

17  "Occupation Qualifier provision" states that:

18    "Disability means that . . . *Injury* or *Sickness* causes physical or
  mental impairment to such a degree of severity that you are:

19  

---

20   [1] The Court generally adopts the same format for citations used by the parties to reference
evidence contained in the plan administrator's record. *See* Dkt. 20 at 2; Dkt. 22 at 2. However,

21  the Court notes that the Administrative record is divided into two sections—the plan documents
and the claim file. Accordingly, citations to the plan documents found in the beginning of the
administrative record are proceeded by "ARPD" while citations to the claim file are proceeded

22  by "ARCF." The record is available on the electronic docket at Dkts. 21-1, 21-2, and 21-3.

> 1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> 2) not *Gainfully Employed*.

ARPD000009.

The plan sets out claim filing procedures, requiring that claimants submit "proof of loss," or "Proof of *Disability*." ARPD000018. "Failure to do so may delay, suspend or terminate *Your* benefits." *Id.* As part of the "Proof of Disability," a claimant must submit:

> Objective medical findings which support *Your Disability*. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).

*Id.* The claim filing procedures also require that a claimant show "[t]he extent of *Your Disability*, including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation*." *Id.* Despite the requirement that a claimant provide objective medical findings that support her claim, the plan also limits coverage for any "*Disability* beyond 12 months after the elimination period if it is due to a diagnosed condition which manifests itself primarily with *Self-Reported Symptoms*." ARPD000013.

## C.     Morgan's Claim

April 8, 2015, Morgan initiated a claim with Hartford for disability benefits. ARCF000082. On May 11, 2015, Dr. Cornelia Moynihan, ND, indicated that Morgan was suffering chronic fatigue from infectious mononucleosis or a "flare up of EBV [Epstein-Barr Virus]." ARCF000242. However, follow-up serologies revealed results indicating former infection with no current illness. ARCF000244–46. Morgan continued

1  to suffer symptoms of fatigue and an inability to concentrate. ARCF000255. On June 18,

2  2015, Dr. Moynihan referred Morgan to Dr. Larry Stonesifer, MD, for an endocrine

3  evaluation. ARCF000253.

4      Morgan continued to visit Dr. Moynihan for follow-up appointments. On June 26,

5  2015, Dr. Moynihan authorized Morgan to work four hours per day. ARCF000343. On

6  July 1, 2015, Dr. Moynihan increased Morgan's work capacity to 4.5 hours each day.

7  ARCF000347. On July 22, 2015, Dr. Moynihan noted that Morgan continued to suffer

8  fatigue and added nausea. ARCF000352.

9      On July 28, 2015, Morgan met with Dr. Stonesifer. ARCF000265. Dr. Stonesifer

10  assessed Morgan with chronic fatigue and possible reactive hypoglycemia. *Id.* Dr.

11  Stonesifer ordered additional tests, including an insulin tolerance test. *Id.* On July 29,

12  2015, Dr. Moynihan ordered that Morgan not work from July 30, 2015, through August

13  21, 2015. ARCF000374. In the same note, Dr. Moynihan stated that Morgan could return

14  to work for 3 hours per day beginning on August 24, 2015. *Id.*

15      On August 19, 2015, Morgan returned for a follow-up with Dr. Stonesifer.

16  ARCF000267. Reviewing Morgan's lab results, Dr. Stonesifer noted that Morgan's

17  "insulin tolerance test was diagnostic of growth hormone deficiency." *Id.* However, he

18  noted that "for definitive diagnosis, we will need the Cortrosyn Stim study." *Id.*

19      On August 24, 2015, Morgan returned to work on a three-hour-per-day schedule.

20  ARCF000405. On August 28, 2015, Dr. Moynihan authorized Morgan to increase her

21  schedule on Mondays and Fridays from three hours to four. ARCF000308.

22

On September 18, 2015, Dr. Ifeanyi Nwaneshiudu, MD, NPH, reviewed the medical records submitted to support Morgan's claim to Hartford. ARCF000278–81. To support her claim, Morgan had presented records from Dr. Moynihan. *See* ARCF000242–47, ARCF000254–57, ARCF000264–68. Dr. Nwaneshiudu did not review the records of Dr. Stonesifer. ARCF000278–79. Dr. Nwaneshiudu assessed that "[w]ithout any evidence of a diagnosis causing physical impairment, there is no need for medical [sic] necessary work restrictions." ARCF000280. On September 30, 2015, Dr. Nwaneshiudu completed an addendum to his initial review after discussing Morgan's functional status with Dr. Moynihan. AR000270. In the addendum, Dr. Nwaneshiudu noted that his "impression of no impairment diagnosis is unchanged." ARCF000270.

On October 6, 2015, Hartford denied Morgan's application for long-term disability benefits based on Dr. Nwaneshiudu's review. ARCF000102–06. The denial dealt exclusively with Dr. Moynihan's diagnosis of infectious mononucleosis and the lack of objective medical findings to support such a diagnosis. ARCF000102–05.

On November 18, 2015, Morgan met with Dr. Stonesifer, who noted in his records: "I have written a letter today asking [Hartford] to give us more time to get her growth hormone to a more appropriate level. I think she is significantly disabled and growth hormone deficiency can certainly cause these symptoms . . . ." ARCF000173. His letter, dated November 12, 2015, stated: "[Morgan] was recently diagnosed with adult growth hormone deficiency. She has been on growth hormone for less than a month but it may take a longer time for her growth hormone to achieve therapeutic level." ARCF000169.

1   On December 24, 2015, Morgan appealed the denial of her claim and

2   supplemented the claim file with records from Dr. Stonesifer. ARCF000168–258.

3   Hartford submitted her medical records to Dr. Charles Fisher, Jr., MD, for another

4   review.

5   On February 2, 2016, Dr. Fisher concluded that Morgan had no physical

6   limitations and that "there is no objective evidence to support a physical inability to

7   remain awake." ARCF000158. On February 5, 2016, Dr. Fisher noted in an addendum

8   that, although "Dr. Stonesifer has diagnosed Ms. Morgan with Adult Human Growth

9   Hormone Deficiency using standard methodologies . . . absent any sort of specific deficit,

10  it would be impossible for any physician to specifically restrict or limit activities based

11  on cognitive deficits alone." ARCF000129–30.

12  On February 24, 2016, Hartford denied Morgan's appeal based on Dr. Fisher's

13  review. ARCF000085–91. On March 9, 2016, Morgan commenced the present action.

14  Dkt. 1.

15  **III. STANDARD OF REVIEW**

16  This matter comes before the Court as a "bench trial on the record." In *Kearney*,

17  the Ninth Circuit "created a 'novel form of trial,' in which the district court, subject to its

18  discretion to consider additional evidence under limited circumstances, is to conduct 'a

19  bench trial on the record.'" *Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991, 996 (9th

20  Cir. 2000) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)).

21  "In a trial on the record . . . the judge can evaluate the persuasiveness of conflicting

22  testimony and decide which is more likely true." *Kearney*, 175 F.3d at 1095.

1    The parties stipulate that the standard for this case is *de novo* review. On *de novo*

2 review, the Court must decide "whether [Morgan] was disabled in the sense defined by

3 the policy." *Kearney*, 175 F.3d 1093. "[W]hen the court reviews a plan administrator's

4 decision under the de novo standard of review, the burden of proof is placed on the

5 claimant." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

6    Under *de novo* review of an ERISA benefits decision, "'a district court should not

7 take additional evidence merely because someone at a later time comes up with new

8 evidence' and '[i]n most cases' only the evidence that was before the plan administrator

9 should be considered." *Kearney*, 175 F.3d at 1091 (quoting *Mongeluzo v. Baxter*

10 *Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).

11 Nonetheless, "the district court has discretion to consider evidence beyond the record

12 where additional evidence is necessary to conduct an adequate de novo review of the

13 benefit decision." *See also Walker v. Am. Home Shield Long Term Disability Plan*, 180

14 F.3d 1065, 1070 (9th Cir. 1999) (quotation omitted).

15    Here, the parties have indicated that evidence outside the plan administrator's

16 claim file is generally not admissible. *See* Dkt. 15 at 2. More importantly, they have

17 stipulated that evidence need not be introduced beyond what is already contained in the

18 administrative record. Dkt. 34. Accordingly, for the purpose of this opinion and order, the

19 Court will rely exclusively on the plan documents and the evidence in the plan

20 administrator's claim file.

21

22

# IV. DISCUSSION

Hartford denied Morgan's claim because it determined that her "proof of loss" did not include objective medical findings "demonstrating the physical inability for Morgan to perform her duties." Dkt. 20 at 19. To reach this conclusion, Hartford relied upon Dr. Fisher's independent review, which indicates that a diagnosis of growth hormone deficiency is "controversial" and highlights that Dr. Stonesifer's diagnosis was based *almost* exclusively on self-reported symptoms. ARCF000156–57.

Accordingly, to prove her claim, Morgan must show that she submitted adequate proof of disability in support of her application for benefits. To assess the claim, the Court must assess and weigh the reports of Doctors Moynihan, Stonesifer, and Fisher.[2]

## A.    Objective Medical Findings on the Extent of Limitations

Morgan argues that Dr. Stonesifer diagnosed her with Growth Hormone Deficiency based on a combination of (1) Plaintiff's subjective complaints of fatigue and "brain fog," and (2) an objective insulin challenge test revealing an Insulin-Like Growth Factor-1 ("IGF-1") Z score that "was diagnostic of growth hormone deficiency." ARCF000155; ARCF000267; ARCF000317. Dr. Stonesifer further opined that he "thinks [Morgan] is significantly disabled" after explaining that "growth hormone deficiency can certainly cause [the] symptoms" revealed on Morgan's "quality of life questionnaire," such as severe fatigue and an inability to focus or even remain standing.

---

[2] The Court notes that the report of Dr. Nwaneshiudu does not include any assessment of Morgan's diagnosis of Growth Hormone Deficiency or her treatment by Dr. Stonesifer. Accordingly, it is not helpful to the Court's analysis, and neither of the parties have relied upon it in their briefings to the Court.

1  ARCF000173. Even Dr. Fisher noted: "Morgan is chronically fatigued secondary to an

2  endocrine disorder. Her fatigue certainly does and has impaired her function at work and

3  in her daily life." ARCF000131.

4         Based on these facts, Morgan argues that her proof of loss included objective

5  evidence that supported her disability. To support this argument, she points to the

6  definition of objective medical findings, which describes tests or procedures standardly

7  accepted for one's "disabling *condition(s)*." ARPD000018 (emphasis added). Construing

8  this language, she argues that the objective findings need not directly prove that she is

9  unable to perform the material and substantial duties of her occupation. Instead, Morgan

10  contends, the objective findings need only support the existence of a condition that has

11  resulted in her disability. *See* Dkt. 36 at 5–7.

12        Hartford concedes that Morgan's IGF-1 Z score is an objective medical finding.

13  Dkt. 37 at 4 ("There is no dispute that Plaintiff has been diagnosed with Adult Human

14  Growth Hormone Deficiency. There is also no dispute that this 'condition' was diagnosed

15  using objective medical findings."). However, Hartford argues that the IGF-1 Z score is

16  insufficient to establish a "causal link between objective medical findings . . . and

17  'Disability.'" *Id.* at 3. More specifically, Hartford argues that Morgan's proof of

18  disability must include objective medical findings showing her inability to perform the

19  material and substantial duties of her occupation. In denying the claim for benefits,

20  Hartford explained:

21              Based upon the functionality as outlined by Dr. Fisher . . . Morgan has not
              been medically precluded from performing either her job for her employer
22              or her occupation in the national economy . . . . Although we note that Dr.

1    Fisher opined that fatigue " . . . would be considered potentially
2    disqualifying in safety sensitive positions (e.g. airline pilot, rail operator,
     crane operation or heavy equipment operator)," Ms. Morgan would not be
3    precluded from performing the material and substantial duties of her
     occupation even with fatigue complaints.

4    ARCF000090.

5        Many of the cases that Hartford has cited in support of its position are easily

6    distinguished from the facts of this case. *See* Dkt. 37 at 5–6. For instance, the Tenth

7    Circuit's decision in *Loughray* was based on the fact that the plaintiff "cannot point to

8    any objective medical condition that may be producing the disabling fatigue of which she

9    complained." 366 Fed. Appx. 913, 926 (10th Cir. 2010). In fact, in *Loughray* there was

10   evidence that directly contradicted the plaintiff's reported fatigue. *See id.* Here, however,

11   Morgan has pointed to her diagnosis of Growth Hormone Deficiency, which every doctor

12   on the record has acknowledged may reasonably result in the type of chronic fatigue that

13   Morgan reports. *See* ARCF000129; ARCF000169. Moreover, the diagnosis was made

14   "using standard methodology" of Morgan's objective IGF-1 Z score. ARCF000129.

15   Also, there is neither evidence nor argument to suggest that Morgan is malingering in the

16   reports of her symptoms.

17       Another important distinction between the present case and the authorities cited by

18   Hartford can be found in a review of *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th

19   Cir. 2007). In that case, the Seventh Circuit found in favor of an insurance company

20   when a claimant failed to provide objective documentation of his functional limitations.

21   *Id.* at 325–25. The Seventh Circuit relied upon language in the plan requiring only that

22   the administrator "[c]onsider subjective complaints of the claimant as well as objective

1    evidence." *Id.* at 323. Based on this language, the Seventh Circuit concluded that merely

2    "considering" such subjective complaints "does not mean that they are to be dispositive

3    of a claimant's entitlement to benefits." *Id.* However, the Seventh Circuit expressly drew

4    a distinction between the language of that plan and cases "in which the plan provided that

5    it would pay benefits for up to [a limited number of] months with respect to disabilities

6    'primarily based on self-reported symptoms.'" *Id.* In drawing this distinction, the Seventh

7    Circuit cited its previous ruling in *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640 (7th

8    Cir. 2007). *Id.*

9           In *Diaz*, the Seventh Circuit found in favor of the claimant (albeit under a

10   favorable summary judgment standard) when his limitations were supported only by

11   subjective complaints, the assessment of treating physicians, and a diagnosis based on

12   diagnostic tests. 499 F.3d 645–48. In reaching its decision, the Seventh Circuit noted that

13   the plan included a twenty-four-month "cap on disabilities that 'are primarily based on

14   self-reported symptoms,'" and that the term "disability" was defined as either "sickness

15   or injury." *Id.* at 645. The Seventh Circuit concluded that "[t]hese provisions erase any

16   doubt that Diaz is entitled to benefits notwithstanding the fact that some of his evidence

17   consists of subjective reports of his pain." *Id.* at 646. In this case, the operative plan

18   language mirrors the plan in *Diaz*, not *Williams*. Specifically, this plan caps coverage for

19   any "*Disability* beyond 12 months after the elimination period if it is due to a diagnosed

20   condition which manifests itself primarily with *Self-Reported Symptoms*." ARPD000013.

21   Additionally, the plan defines "disability" as a "sickness or injury" that otherwise

22   satisfies the occupation qualifier. ARPD000009.

1      Hartford also relies upon *Hilton v. UNUM Life Ins. Co. of Am.*, 967 F. Supp. 2d

2 1114 (E.D. Va. 2013), where a district court determined that a claimant was required to

3 provide objective medical findings that verified the "manifestations" of her diagnosed

4 condition. However, the district court's decision was focused on whether that plan's self-

5 reported symptoms limitation (similar to the one in Morgan's plan) precluded continued

6 long term benefits *beyond* the stated twenty-four-month limitation. *Id.* at 1122–23. In that

7 case, the plan administrator had already concluded that the claimant was entitled to

8 benefits during the limited period, despite that lack of objective findings that supported

9 the extent of her self-reported symptoms. The plan administrator's decision in that case

10 actually runs contrary to Hartford's position, as Hartford denied benefits to Morgan

11 entirely—even during the period described by the plan for disabilities manifested

12 primarily through self-reported symptoms.

13      Reviewing the record, the Court concludes that Morgan has sufficiently proven

14 that she suffered from "a diagnosed condition which manifests itself primarily with self-

15 reported symptoms" at the time Hartford denied her benefits. Morgan was diagnosed with

16 Growth Hormone Deficiency "using standard methodologies" and she suffered from

17 "substantial and well documented fatigue" commonly associated with her diagnosed

18 sickness. ARCF000129. Although the extent of her illness manifested itself primarily

19 through self-reported symptoms, its existence was nonetheless supported by diagnostic

20 tests showing her low IGF-1 Z score. Morgan's self-reported descriptions of her fatigue,

21 coupled with her physicians' observations at appointments, were sufficiently serious that

22 they caused her treating physicians to place time limitations on Morgan's work schedule

1    and conclude that she is "significantly disabled." While Dr. Fisher highlighted a lack of

2    documentation regarding any specific physical limitations or cognitive deficits, he

3    recognized that Morgan's "physicians have clearly documented their perception that she

4    is markedly and dramatically fatigued . . . ." ARCF000129–30. Under the language of the

5    plan, Morgan was not required to provide "objective medical findings" that prove the

6    degree of the limitations indicated by her self-reported symptoms. Therefore, to the

7    extent that her claim for benefits was denied on this basis, the denial was wrongful.

8    **B.    Evidence of Inability to Perform Material and Substantial Duties**

9            The analysis above does not mean that Plaintiff has proven that her condition of

10   Growth Hormone Deficiency satisfied the plan's definition of "disability" as found under

11   the "occupation qualifier" provision. ARPD000018. While Morgan need not prove her

12   inability to perform her occupation directly through "objective medical findings," her

13   self-reported symptoms and objectively diagnosed condition must still render her

14   "continuously unable to perform the *Material and Substantial Duties* of [her] *Regular*

15   *Occupation*." ARPD000009. This is evident in the claim procedures, which also require

16   that she provide information on "[t]he extent of [her] *Disability*, including restrictions

17   and limitations which are preventing [her] from performing [her] *Regular Occupation*."

18   ARPD000018. Moreover, the self-reported-symptoms provision only applies to a

19   "*Disability* . . . due to a diagnosed condition which manifests itself primarily with *Self-*

20   *Reported Symptoms*." ARPD000013. Under this language, Morgan's diagnosed condition

21   and self-reported symptoms are insufficient on their own if they do not constitute a

22   "disability" as defined in the plan.

Morgan's employer reported that Morgan's actual position as an Operations Specialist involved duties that would be classified as a "heavy physical demand occupation." ARCF000005; ARCF000089–90; ARCF000140–44. A "Rehabilitation Claims Manager" performed an occupational analysis of Morgan's occupation in the national economy and determined that it was a "medium physical demand occupation," requiring "frequent reaching, handling, fingering, near acuity, and depth perception with occasional stooping, crouching, feeling and color vision required." ARCF000005; ARCF000090. The duties of Morgan's actual occupation included "the use of power and manual hand tools, carrying up to 15 pounds, pushing parts up to 75 pounds in a cart, constantly handling, fingering, and reaching at waist level, and occasionally reaching above shoulder and below waist level." ARCF000005; AR000089. Accordingly, to establish that she suffered a disability, Morgan must show that the self-reported symptoms of which she complained—more specifically, the reported symptoms reasonably attributable to her diagnosed condition of Growth Hormone Deficiency— rendered her unable to perform the above described tasks.

Unfortunately, the record offers little information regarding how Morgan's fatigue and other symptoms would relate to her specific duties as an Operations Specialist. For the most part, Morgan's treating physicians offered only general observations that her fatigue is chronic while making conclusory statements that she appears to be "significantly disabled." The most detailed description of the extent of Morgan's symptoms comes in the form of Morgan's quality of life surveys, indicating her perceived difficulty in performing even regular everyday tasks and a difficulty remaining awake.

1   *See* AR000181–82. Hartford's final denial of appeal is the only aspect of the record that

2   directly discusses Morgan's fatigue and how it relates to the occupational analysis report

3   on her position as an Operations Specialist. ARCF000090. However, the denial offers

4   only a conclusory statement that "Morgan would not be precluded from performing the

5   material and substantial duties of her occupation even with fatigue complaints."

6   ARCF000090. This is particularly unhelpful where the denial in no way assesses the

7   extent of her fatigue and the analysis seems directly tied to the prior conclusion that her

8   fatigue is not supported by objective medical findings. *See id.*

9       Dr. Fisher noted in his initial review that "Ms. Morgan has no *physical* impairment

10  that would substantially affect her physical ability to perform her job as far as sitting,

11  standing, lifting, carrying, use of any sense organ, etc." ARCF000157 (emphasis added).

12  However, it appears that Dr. Fisher then continued on by distinguishing between

13  "physical impairments" and the fatigue of which Morgan complained. *Id.* Specifically, he

14  stated that, despite the lack of physical limitations, "[Morgan] clearly has fatigue and . . .

15  [t]his undoubtedly affects her job performance, and would be considered potentially

16  disqualifying in safety sensitive positions." *Id.* Therefore, he noted, "[s]hould she not

17  respond to treatment . . . neuropsychiatric testing may be helpful to further characterize

18  the cause and extent of her illness." *Id.*

19      Dr. Fisher also expressly noted that "[Morgan] may be unsuccessful as an

20  employee due to her fatigue," despite the fact that she has "neither defined limitations nor

21  appropriate restrictions based on cognitive deficits." ARCF000130. He further wrote,

22  "[t]hat [Morgan] is fatigued, sleeps through the day, and has failed at a job in which she

1   was previously successful is compelling circumstantial evidence of impairment."

2   ARCF000131. Concluding his review of Morgan's claim, Dr. Fisher stated in an

3   addendum:

4           Ms. Morgan is chronically fatigued secondary to an endocrine
        disorder. Her fatigue certainly does and has impaired her function at work
5       and in her daily life. Taken individually, she has neither specific medical or
        psychological diagnoses nor focal cognitive deficits reflected in the records
6       provided *that would in and of themselves require restriction or limitations
        in function or activity.* However, it is also clear that she feels impaired and
7       has been unsuccessful in a job she was previously able to perform.
        Although she does not have specific defined limitations in cognition or
8       concentration both of her physicians have well documented their opinion
        that her fatigue is secondary to endocrine dysfuntion [sic] and is of
9       sufficient severity that she feels impaired in the workplace and in her
        activities of daily living.

10  *Id.* (emphasis added).

11          During one examination, Dr. Stonesifer observed that Morgan's self-reported

12  fatigue had resulted in "difficulty staying on her feet for any length of time, which she is

13  required [to do] at work." ARCF000173. The occupational analysis report indicates that

14  Morgan's actual position required that she stand for her entire eight-hour workday.

15  ARCF000005. While the occupational analysis report did not describe any specific

16  standing or sitting requirements as "physical demands" or "essential duties" of an

17  Operations Specialist in the national economy, the report did state that the environmental

18  conditions of the occupation in the national economy "may still involve long periods of

19  standing, sitting, or working on ladders." *Id.* If the environmental conditions of the

20  occupation require long periods of standing, it can be reasonably inferred that the

21  inability to stand for any extended period of time would preclude Morgan from

22

1    performing the occupation's material and substantial duties. Accordingly, in at least one

2    instance, a medical professional indicated a specific manner in which Morgan's self-

3    reported symptoms of fatigue were preventing her from performing her occupation.

4          As noted by Dr. Fisher, Morgan's medical diagnosis of Growth Hormone

5    Deficiency is insufficient "in and of [itself] [to] require restriction or limitations in

6    function or activity." ARCF000131. However, when this diagnosis is combined with Dr.

7    Stonesifer's observations regarding Morgan's extreme fatigue, as well as Morgan's

8    reports of exhaustion to the point of not being able to stand for any extended period—

9    which are uncontroverted on the record—it appears more likely than not that Morgan's

10   diagnosed condition prevents her from performing the material and substantial duties of

11   her occupation. Therefore, the limited record indicates that Morgan suffers from a

12   "disability" as defined by the plan, and Morgan is entitled to relief.

13   **C.    Liability and Attorney Fees**

14         The final issues before the Court are the extent of Hartford's liability under the

15   plan and whether the Court should award attorney fees and prejudgment interest. The

16   Court requests that the parties submit additional briefing on these issues as follows:

17         **1.    Period Between Expiration of Twelve-Month Self-Reported Symptom
                    Limitation and Entry of Judgment**

18         Although Morgan has prevailed on her claim, there can be no doubt that Morgan's

19   claim for benefits, as it is supported by the administrative record, is subject to the plan's

20   cap on benefits for any disability that manifests primarily through self-reported

21

22

1  symptoms. *See* ARPD000013. At least on the record before the Court, Morgan's benefits

2  are limited to a twelve-month span following the applicable "elimination period."

3       However, the parties have not addressed how the Court should assess claimed

4  benefits between the expiration of that period and the conclusion of these proceedings. It

5  appears that the Court's power to award unpaid benefits includes the power to award

6  benefits through the date of judgment. *See Grosz-Salomon v. Paul Revere Life Ins. Co.*,

7  237 F.3d 1154, 1163 (9th Cir. 2001). Additionally, the Ninth Circuit has stated that "[i]t

8  would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to

9  update her former insurance company and the court on her disability during the pendency

10  of her internal appeals and litigation, on the off chance that she might prevail in her

11  lawsuit." *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24–25 (1st Cir. 2003).

12       The record does not presently offer any evidence to either support or refute a claim

13  for benefits beyond the twelve-month limitation period. It is clear from the plan

14  documents that Morgan is not entitled to an unconditional award of future benefits. *See*

15  *Stout v. Hartford Life & Acc. Ins. Co.*, C 11-6186 CW, 2012 WL 762024, at *1 (N.D.

16  Cal. Mar. 8, 2012). The plan specifically states that "*You* may be required to submit proof

17  that you continue to be *Disabled* . . . . Failure to do so may delay, suspend or terminate

18  *Your* benefits." ARPD000018. Also, Hartford has "the right to have [Morgan] examined

19  as often as reasonably necessary while the claim continues." *Id.*

20       Although Morgan has satisfied the requirements for showing a disability within

21  the twelve-month limitation period, Dr. Stonesifer noted that "only when we have

22  reached a therapeutic dose of growth hormone and her IGF is normal, will we be able to

tell if this is causing her symptoms are [sic] not." ARCF000173. Also, Dr. Fisher noted that "[s]hould [Morgan] not respond to treatment . . . neuropsychiatric testing may be helpful to further characterize the cause and extent of her illness." ARCF000157. If Morgan has not been responsive to treatment, then it appears that she would lack any objectively supported diagnosis. Without a diagnosis that would reasonably support her reported symptoms, Morgan would be unable to satisfy the plan's "Proof of Disability" requirement unless her symptoms were otherwise supported by an objective medical finding, such as the neuropsychiatric testing referenced by Dr. Fisher.

Based on the foregoing, the Court requests additional briefing on the issues of (1) whether the Court should award benefits for the period between the twelve-month limitation's expiration and the Court's pending judgment, and (2) whether the Court may require that the parties supplement the record or conduct an additional evidentiary hearing to determine whether an award for that period would be just.

## 2.    Attorney Fees and Prejudgment Interest

The Court also requests that the parties submit briefing on the remaining issue of attorney fees, which appears to fall within the discretion of the Court, so long as it considers the five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452–53 (9th Cir. 1980). The parties may also address the issue of prejudgment interest.

## 3.    Amount of Award

The parties agree that the record does not contain the necessary information for the Court to determine the appropriate amount of the award, including Morgan's wages and any information on deductible sources of income. Therefore, the parties have stipulated

1  that the Court may order that they meet and confer to craft a proposed judgment with the

2  proviso that, if no agreement is reached, the Court may order further briefing or an

3  evidentiary hearing, if deemed necessary, in order to resolve any dispute. *See* Dkt. 36 at

4  13; Dkt. 37 at 11.

5       The Court, having reviewed the record, hereby rules in favor of Plaintiff Tracie D.

6  Morgan and **FINDS, CONCLUDES,** and **ORDERS**:

7                           **V. FINDINGS OF FACT**

8       1.     Morgan's diagnosed condition of Growth Hormone Deficiency was

9  supported by "objective medical findings."

10      2.     Morgan's self-reported symptoms are reasonably attributed to her

11 diagnosed condition of Growth Hormone Deficiency.

12      3.     Morgan's diagnosed condition of Growth Hormone Deficiency prevented

13 her from performing the material and substantial duties of her occupation.

14                          **VI. CONCLUSIONS OF LAW**

15      1.     The plan's "Proof of Disability" provisions do not require that Morgan

16 provide "objective medical findings" that directly evaluate and prove her inability to

17 perform the material and substantial duties of her occupation.

18      2.     The plan's "objective medical findings" requirement is satisfied by

19 objective tests that support a claimant's diagnosed condition if the claimant's "self-

20 reported symptoms" are reasonably attributed to that condition.

21      3.     Morgan suffered from a "Disability" as the term is defined in the plan's

22 "Occupation Qualifier."

1     4.     Morgan is entitled to benefits.

2     5.     Morgan's benefits are subject to the plan's twelve-month cap for

3     disabilities that manifest themselves primarily through self-reported symptoms.

4                                         **VII. ORDER**

5     1.     The parties may submit additional briefing, as described above, on the

6     issues of (1) liability for the period between an expiration of twelve-month self-reported

7     symptom limitation and entry of judgment in this case, and (2) attorney fees and

8     prejudgment interest. The briefing shall be filed no later than two weeks from the date of

9     this order and shall not exceed ten pages.

10    2.     The parties shall meet and confer to craft a stipulated proposed judgment

11    conforming to the Court's findings in this order. The proposed judgment shall be filed no

12    later than two weeks subsequent to the Court's forthcoming order on the outstanding

13    issues outlined above.

14            Dated this 5th day of March, 2017.

15

16                                                         _____

17                                                         BENJAMIN H. SETTLE
                                                           United States District Judge

18

19

20

21

22